UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                FOR ONLINE PUBLICATION ONLY

---------------------------------------------------------------- X
WILLIAM ROLAND JOHNSON,                       :
                                              :
                             Plaintiff,      :       MEMORANDUM
                                              :       AND ORDER
       - against -                           :
                                              :       05 CV 1543 (JG)
                                              :
DONJON MARINE CO., INC., WITTE HEAVY          :
LIFT, INC., WITTE HEAVY LIFT TOWING           :
DIVISION, INC., and the TUG ATLANTIC          :
SALVOR, *In Rem*,                             :
                                              :
                            Defendants.    :
---------------------------------------------------------------- X

A P P E A R A N C E S :

    COOK, HALL & LAMPROS, LLP
        Promenade Two
        Suite 3700
        1230 Peachtree Street, N.E.
        Atlanta, Georgia 30309

           - and -

    CAPPIELLO HOFFMANN & KATZ, P.C.
        360 W. 31st Street, Suite 1506
        New York, New York 10001

    By:   Christopher B. Hall
           Attorneys for Plaintiff

    WISS & BOUREGY, P.C.
        30 North William Street
        Pearl River, New York 10965
    By:   Raymond R. Wiss
           Attorneys for Defendants

JOHN GLEESON, United States District Judge:

At approximately 2:15 a.m. on December 12, 2004, the starboard engine of the tugboat *Atlantic Salvor* exploded as the tug was passing near the Verrazano Bridge. Assistant Engineer William Roland Johnson sued the defendants (referred to here collectively as "Donjon") for his injuries, alleging negligence under the Jones Act, 46 U.S.C. app. § 688 (2000), and alleging the unseaworthiness of the vessel under the general maritime law. Johnson has moved for summary judgment on the issues of unseaworthiness and whether he was contributorily negligent. I heard oral argument on both questions on October 18, 2006.

I conclude that the vessel was unseaworthy as a matter of law, but that there is a genuine factual issue as to Johnson's contributory negligence. Accordingly, I grant plaintiff's motion as to unseaworthiness and deny it as to contributory negligence. Jury selection and trial is set for February 20, 2007 at 9:30 a.m. in Courtroom 6C-South. The parties are directed to appear for a final pretrial conference on February 8, 2007.

BACKGROUND

The tug *Atlantic Salvor* was returning from dumping a scow when a failure in the power assembly of the tug's starboard engine led to a crank-case explosion. Dep. of Kenneth M. Garside 105:15-19, June 29, 2006; *see also* Def.'s Report of Marine Accident, Injury, or Death at 2. Just prior to the explosion, Johnson was in the engine room. Pl.'s Dep. 61:2-21, Dec. 14, 2006. He heard a sound coming from the engine, though the parties dispute the type of sound. *Compare id.* 62:9-20 (describing sound as a "fuel knock") *with* Dep. of Brendan Matton 23:13-17, November 7, 2005 (describing sound as "somebody pounding on a wheelhouse with a sledgehammer . . . [r]epeatedly"). The parties also disagree about the cause of the explosion. While Johnson points to evidence that the engine was not properly maintained, *see, e.g.*, Dep. of

2

Gabriel Yandoli, Jr. 36 & 45-46, December 1, 2005; Letter Report of Michael J. Clemens at 6, May 5, 2006, Donjon's expert disputes that improper maintenance caused the explosion, *see* Supplemental Report of Kenneth M. Garside ¶¶ 8, 16.[1] Donjon's expert opines that an undetectable latent defect in the piston caused the explosion. *See id.* ¶ 17.

Johnson retrieved a hammer from a tool box in the engine room and approached the cylinder to remove the cover by loosening the cover's wing nuts. Pl.'s Dep. 87:8-15, 102:17-103:4. He claims he had been trained to execute this procedure upon hearing a fuel knock. *Id.* 62:21-65:2. Donjon's expert claims that the proper response to the sound Johnson heard was to shut down the engine immediately. Aff. of Kenneth M. Garside ¶¶ 22-23, Sept. 7, 2006.

The engine exploded. Johnson suffered, among other injuries, second- and third-degree burns. Pl.'s Dep. 125:14-128:19. Though the parties do not appear to dispute the fact of injury, they part ways about the extent of the injuries. *See* Def.'s Br. at 12; Aff. of Raymond R. Wiss ¶ 15, Sept. 15, 2006. The parties also disagree as to whether a defect in the crank-case cover and the presence of flammable materials in the engine room exacerbated Johnson's injuries. *See* Def.'s Br. at 9-10.

DISCUSSION

A.  *The Standard of Review*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate that no

---

[1] Johnson has moved to preclude the testimony of this expert. Donjon has also filed motions to preclude the liability experts of Johnson. These applications are all denied.

genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). For summary judgment purposes, a fact is "material" when its resolution "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Accordingly, the test for whether an issue is genuine requires "the inferences to be drawn from the underlying facts [to] be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

B.      *Unseaworthiness*

The doctrine of unseaworthiness establishes an "absolute" duty on the part of the shipowner "to provide a seaworthy vessel." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549 (1960) (quotation marks omitted). The duty is doctrinally independent from negligence. *See id.* at 550. Accordingly, so long as an unseaworthy condition exists, the shipowner is liable for the unseaworthy vessel even if "the negligence of the officers of the vessel contributed to its unseaworthiness," *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 100 (1944), even if the negligence of the plaintiff contributed to its unseaworthiness, *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 408-09 (1953); *Grillea v. United States*, 232 F.2d 919, 923 (1956) (opinion of L. Hand, J.), and even if the shipowner lacks notice of the unseaworthy condition, *Mitchell*, 362 U.S. at 549-50 (holding that shipowner's actual or constructive notice of a temporary unseaworthy condition is not required to support liability for unseaworthiness).

General maritime law holds shipowners strictly accountable for their unseaworthy vessels for at least two reasons. First, such "extensive liability" discourages shipowners from

4

allowing unseaworthy conditions on their ships by "remov[ing] a profitable temptation to add to the hazards of the sea." *Mitchell*, 362 U.S. at 557 (Frankfurter, J., dissenting); *see also Mahnich*, 321 U.S. at 103 ("We have often had occasion to emphasize the conditions of the seaman's employment, which have been deemed to make him a ward of the admiralty and to place large responsibility for his safety on the owner.") (citations omitted). Second, liability without fault makes the shipowner an insurer of the risky enterprise of ships at sea, because the shipowner "is in a position, as the worker is not, to distribute the loss in the shipping community which receives the service and should bear its cost." *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 94 (1946); *see also Mitchell*, 362 U.S. at 557-58 (Frankfurter, J., dissenting).

Unseaworthiness liability has its limits, however. The shipowner does not ensure an "accident-free ship," but rather "a vessel and appurtenances reasonably fit for their intended use." *Mitchell*, 362 U.S. at 550. As the Second Circuit has pointed out, this limitation "has reference merely to the standards set for the ship and its appliances, and not to the duty, which remains absolute." *Van Carpals v. The S.S. Am. Harvester*, 297 F.2d 9, 11 n.2 (2d Cir. 1961), *cert. denied*, 369 U.S. 865 (1962). It follows, then, that in many cases "the mere fact that an accident occurs and a seaman is injured while using an appurtenance in the performance of his duties cannot, without more, establish that a vessel is unseaworthy." *Mosley v. Cia. Mar. Adra, S.A.*, 314 F.2d 223, 229 (2d Cir. 1963), *cert. denied*, 375 U.S. 835 (1963). After all, the accident might be due to the negligence of the sailor himself on a wholly seaworthy vessel.[2] The

---

[2] Despite the broad language quoted in the *Mosley* case, it appears some accidents are so illustrative of a vessel unfit for its normal use that proof of the accident itself suffices to show a breach of the absolute duty. *See, e.g.*, *Van Carpals*, 297 F.2d at 11 ("[T]he cause of the accident may be inexplicable, yet it, and the way it occurred, demonstrated that the valve was actually not in a safe condition for the work needed to be done upon it."); *Sprague v. The Texas Co.*, 250 F.2d 123, 123-24 (2d Cir. 1957) (per curiam) (holding water heater unseaworthy as a matter of law when "hot water and steam unexpectedly escaped" injuring plaintiff "despite the indication on the pressure gauge that the pressure was zero and the fact that water and steam were no longer draining"). While the

Supreme Court has held that "where no condition of unseaworthiness exist[s]," a shipowner is not accountable "for a third party's single and wholly unforeseeable act of negligence." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 500 (1971).

Thus, to prevail on an unseaworthiness claim, a plaintiff must prove the existence of an unseaworthy condition. But that is all; a plaintiff need not prove why a particular unseaworthy condition exists. *See Oliveras v. Am. Export Isbrandtsen Lines, Inc.*, 431 F.2d 814, 816 (2d Cir. 1970) ("On the issue of the ship's unseaworthiness it is of no moment to speculate as to why the hook and wedge, fittings intended to keep the sliding door open, failed to function."). And when neither party can explain phenomena illustrative of a vessel or appurtenance not reasonably fit for its intended use, the shipowner is liable as a matter of law. In *Van Carpals*, for example, both sides agreed that steam erupting out of a valve injured a sailor working on the valve, and neither side could explain the accident. *See* 297 F.2d at 11. The Second Circuit held that the undisputed fact of the accident, "and the way it occurred, demonstrated that the value was actually not in a safe condition for the work needed to be done upon it," which "imperatively required a finding of unfitness for the task in hand" as a matter of law. *Id.*

On the other hand, if there is a genuine dispute as to whether the injury was caused by an unseaworthy condition or, instead, by an isolated act of negligence, then the seaworthiness question must go to the jury. In *Sotell v. Maritime Overseas Inc.*, 474 F.2d 794, 796 (2d Cir. 1973), the Second Circuit affirmed a trial court's refusal to grant a directed verdict of unseaworthiness in favor of the plaintiff sailor because, in addition to evidence of a turbine

---

case at issue might be just such a case of unseaworthiness *per se*, as discussed *infra* there is no need to explore this question.

explosion, "the defendant produced evidence which supported a finding that the plaintiff's negligent actions alone were the cause of the explosion . . . ." The Second Circuit noted that "[i]f the only evidence in the case was the undisputed fact that the plaintiff was injured by an explosion of unknown origin, then he probably would have been entitled to a [directed] verdict." *Id.* (citing, *inter alia*, *Van Carpals*).

Here, the question presented is whether the *Atlantic Salvor* was unseaworthy as a matter of law. Donjon does not dispute that the engine exploded. If the explosion were the only evidence before me, under *Van Carpals* that fact alone (coupled with proof that the explosion caused Johnson's injuries) would suffice to trigger Donjon's liability. Donjon appears to argue otherwise, insisting that "there are different expert opinions as to the issue of whether the engine was reasonably fit for its intended use." Def.'s Br. at 18. Indeed, Donjon devotes much of its brief to contesting Johnson's theory that the engine exploded due to improper maintenance.[3] But Donjon cannot escape summary judgment by disputing Johnson's explanation for why the engine exploded while the *Atlantic Salvor* was sailing normally, because that fact is not material to the question of unseaworthiness. If there exists only proof of an inexplicable explosion on a vessel, then under *Van Carpals* the vessel is unseaworthy.

Donjon also raises a *Sotell* issue, devoting considerable argument to its attempt to establish that Johnson was negligent in failing to shut off the engine before it exploded. In *Sotell*, judgment as a matter of law was inappropriate because the defendant raised a genuine dispute as to whether the plaintiff's acts *alone* caused the explosion. If Donjon could counter

---

[3] The parties also spend considerable effort arguing about whether the crank-case cover was defective, whether Donjon stored flammable materials in the engine room, and whether either condition constitutes unseaworthiness. As I explain *infra*, I do not address these issues, because I dispose of the unseaworthiness question on other grounds.

7

Johnson's proof of unseaworthiness (*i.e.*, proof of the explosion) with evidence that Johnson's negligence alone caused the explosion, then there would be genuine *Sotell*-type dispute for the jury on the question of unseaworthiness.

But Donjon cannot do so. If Johnson was negligent, that negligence only *contributed* to the consequences of a preexisting unseaworthy condition. To be sure, the parties disagree about the character of that preexisting condition. Johnson argues that improper maintenance caused the explosion, while Donjon blames a latent defect in the piston. But even on Donjon's version of the facts, and even drawing -- as I must -- all inferences in its favor, the only rational conclusion is that the engine was so unfit for its intended use that it exploded under normal operating conditions.[4] Accordingly, Donjon's version of the facts, if true, leads to judgment as a matter of law against Donjon on the question of unseaworthiness.

Donjon protests that the defect was undetectable, but that claim is immaterial. Unseaworthiness liability is divorced from concepts of negligence. In *Mitchell*, the Supreme Court rejected the defense that the shipowner lacked constructive notice of the slime and fish gurry on a rail where a sailor slipped and injured himself. 362 U.S. at 549. While the dissent in *Mitchell* objected to holding the shipowner liable even for conditions it had no ability to remedy, *id.* at 569-70 (Frankfurter, J., dissenting) ("No compensating increase in the caution actually to be exercised can be anticipated as a result of the creation of such a duty. Nor can the owner pass along the risk to suppliers or service companies."), that objection failed to carry the day. Accordingly, lack of actual or constructive notice of the defect provides no defense to Donjon.

---

[4] For the purposes of summary judgment, it does not matter that the parties disagree as to the ultimate cause of the explosion. The "why" of the explosion is not material. Under the substantive law of unseaworthiness, proof of why an engine explodes does not determine the outcome of a case so long as it is undisputed that the vessel was not reasonably fit for its intended use.

Finally, Donjon contends that Johnson has not offered any cognizable proof that the "alleged injuries" he suffered were caused by the explosion of the *Alantic Salvor*'s engine while Johnson was in the engine room. Def.'s Br. at 27. But the authority Donjon points to fails to support its position. *In re Rezulin Products Liability Litigation*, 441 F. Supp. 2d 567, 575 (S.D.N.Y. 2006), discusses the familiar proposition that expert testimony as to causation is required in products liability cases. Indeed, such testimony is required in all cases "where an injury has multiple potential etiologies . . . ." *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004). In cases like this one, however, where the causes of Johnson's burns are obvious and indisputable, no medical testimony is required to link the explosion to the fact that he was injured. *See id.* ("It is well settled that expert testimony is unnecessary in cases where jurors 'are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training.'") (quoting *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962)).

At bottom, Donjon disputes that the explosion caused the injury to Johnson's back. Def.'s Br. 28-30. But Johnson alleges he suffered more than just a back injury -- for example, he also alleges burns to his face and upper body. *See* Pl.'s Dep. 125:14-128:19. Donjon does not dispute these allegations, and it could scarcely do so in good faith. In short, Donjon does not dispute that the explosion caused Johnson's injury; it disputes the extent of Johnson's injuries. This matter is immaterial to liability, because it goes to the question of damages. Summary judgment for Johnson on the issue of unseaworthiness is therefore appropriate.

C. *Contributory Negligence*

Johnson contends that he was not contributorily negligent as a matter of law. "[A]ny contributory negligence on the part of an injured worker which brings into play an unseaworthy condition does not bar recovery; rather, the degree of contributory negligence is ground only for mitigation of damages." *Marchese v. Moore-McCormack Lines, Inc.*, 525 F.2d 831, 834 (2d Cir. 1975); *see also Grillea*, 232 F.2d at 923 ("[T]he contributory negligence of a seaman is not a defense to an action based on the ship's unseaworthiness; although apparently it is a proper factor in fixing the amount of the recovery.") (citations omitted); *Snow v. Boat Dianne Lynn, Inc.*, 664 F. Supp. 30, 32 (D. Me. 1987) ("The seaman's responsibility to remedy a pre-existing hazard is relevant only to the issue of the seaman's comparative fault and thus to his damages.").

It is not possible to determine the extent of Johnson's negligence, if any, as a matter of law. There is a genuine factual dispute about whether Johnson breached his duty of reasonable care in reacting to the imminent explosion. Johnson claims that, upon hearing a "fuel knock," Pl.'s Dep. 62:9-20, he attempted to follow the instructions given to him by the chief engineer -- to pull the cover off the cylinder, lock the cylinder out, and call the chief engineer to decide what to do next, *id.* 62:21-65:2. Accordingly, Johnson argues he did not breach the standard of due care when he obtained a hammer to remove the cylinder cover. But Donjon replies with evidence that the sound emitted by the engine was actually an unusually loud banging like "somebody pounding a wheelhouse with a sledgehammer," Matton Dep. 23:13-17, and claims that such an abnormal noise should have caused Johnson to turn off the engine immediately, *see* Garside Aff. ¶¶ 22-24. Donjon claims that Johnson improperly diagnosed the engine and put himself in danger by trying to remove the cylinder cover instead of shutting the

engine down immediately. *Id.* These contradictory versions of events about the loudness of the pre-explosion sound and how Johnson should have reacted to that sound must be resolved by a jury.[5]

CONCLUSION

For the reasons set forth above, I hereby grant plaintiff's motion for summary judgment on the question of seaworthiness and deny the motion on the question of contributory negligence.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
November 8, 2006

---

[5] Johnson also points to several post-accident reports and witness statements he claims exonerate him of fault for the accident. *See* Pl.'s Mem. in Supp. of Partial Summ. J. at 4 (collecting statements). Donjon dismisses the significance of these reports, claiming the authors were not "charged with" determining Johnson's negligence, that they did not know the relevant facts, and that they mostly had to do with Johnson's actions subsequent to the explosion. Def.'s Br. at 5. Those reports may prove extremely useful to Johnson at trial, but they do not alter the fact that, on the evidence presented, the issue of contributory negligence is one for the jury.